CC: BOP; USM; USPO

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CRIMINAL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **EDCR 15-00055-VAP** | Date | July 16, 2020 |

Title  *United States of America v. Peter Lee Moore*

---

Present: The Honorable    VIRGINIA A. PHILLIPS, UNITED STATES DISTRICT JUDGE

| CHRISTINE CHUNG | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None | None |

**Proceedings:**   **MINUTE ORDER GRANTING EMERGENCY MOTION TO REDUCE THE TERM OF IMPRISONMENT (IN CHAMBERS)**

   Pending before the Court is Defendant Peter Lee Moore's ("Defendant") "Emergency Motion to Reduce the Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)(i) and 18 U.S.C. § 3624(c)" ("Motion"), filed on June 15, 2020. Having considered the papers filed in support of, and in opposition to, the Motion, the Court finds this matter appropriate for resolution without oral argument pursuant to Local Rule 7-15 and GRANTS the Motion for the following reasons.

**I.     Background**

   On July 22, 2015, Defendant pled guilty to a single-count Information charging him with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A). On October 26, 2015, the Court sentenced Defendant to a term of imprisonment of 120 months followed by a five-year term of supervised release. According to the Government, Defendant's projected release date is June 9, 2026.

   Defendant filed the instant Motion pro se on June 15, 2020. The Court ordered the Government to file its response to the Motion by June 22, 2020 and Defendant to file a reply thereto by June 29, 2020. The Government filed timely Opposition to the Motion on June 22, 2020. On June 23, 2020, the Federal Public Defender's Office filed an ex parte application, seeking modification of the briefing schedule to allow it to file a reply to the Government's Opposition by July 6, 2020. The Court granted the ex parte application. After receiving another extension, the Federal Public Defender's Office, now representing Defendant on this Motion,

filed a timely Reply on his behalf on July 14, 2020.  The Court then took the matter under submission.

## II.     Legal Standard

Defendant moves for relief pursuant to 18 U.S.C. § 3582(c)(1)(A), which allows a court to modify a sentence under certain circumstances.  This statute was amended by the First Step Act, which went into effect on December 21, 2018.  See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194.  Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release, which rarely occurred.  Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A) to "increase[] the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted).  That section now provides a sentencing court may modify a sentence either upon a motion of the Director of the BOP "or upon motion of the defendant after [he] has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility . . . ."  18 U.S.C. § 3582(c)(1)(A).

As amended, 18 U.S.C. § 3582(c)(1)(A)(i) permits a sentencing court to grant a motion for compassionate release filed by a defendant where "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ."

Issued in 2006 and last amended on November 1, 2018, the Application Notes of the U.S. Sentencing Guidelines § 1B1.13 provide that "extraordinary and compelling reasons exist" in the following circumstances:

> (A) Medical Condition of the Defendant. –
> > (i) The defendant is suffering from a terminal illness (i.e., a serious physical and advanced illness with an end of life trajectory) . . . .
> > (ii) The defendant is –
> > > (I) suffering from a serious physical or medical condition,
> > > (II) suffering from a serious functional or cognitive impairment, or
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant. – The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances. –
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons. – As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, Application Note 1; see also 28 U.S.C. § 994 (authorizing the U.S. Sentencing Commission to describe what should be considered extraordinary and compelling reasons for sentence reduction). Section 1B1.13 also directs courts to consider "the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable . . . ." Finally, the policy statement requires a finding that "the defendant is not a danger to the safety of any other person or the community provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

The Sentencing Commission's policy statement has not been amended since the effective date of the First Step Act to refer to § 3852(c)(1)(A) motions filed by defendants. District courts disagree whether the policy statement set forth at U.S.S.G. § 1B1.13 applies to motions for compassionate release filed by defendants. See United States v. Singui, No. 2:12-CR-00851-CAS-1, 2020 WL 2523114, at *4 (C.D. Cal. May 18, 2020) (collecting cases). In the absence of controlling authority on the applicability of U.S.S.G. § 1B1.13 to motions for reduction of sentence filed by defendants, and in light of the limited statutory exceptions to the general rule of finality of judgment, the Court follows the guidance of the foregoing policy statement which defines "extraordinary and compelling reasons" that warrant compassionate release pursuant to 18 U.S.C. § 3582(c)(1). See Dillon v. United States, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (quoting 18 U.S.C. § 3582(b)); see also United States v. Parker, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *8-9 (C.D. Cal. May 21, 2020) (finding U.S.S.G. § 1B1.13 no longer limiting but considering the policy statement as guidance). The Court does not, as it need not, determine whether the foregoing policy statement is binding here. See, e.g., United States v. Head, No. 2:08-cr-00093-KJM-2, 2020 WL 3180149, at *3 (E.D. Cal. Jun. 15, 2020).

### III.   Discussion

In the Motion, Defendant argues the COVID-19 pandemic and ongoing outbreak of the COVID-19 virus at the Federal Correctional Institution at Lompoc, California (hereinafter "FCI-Lompoc"), where he is housed, coupled with his chronic medical conditions constitute extraordinary and compelling reasons to reduce his sentence and release him from custody. Defendant explains he "currently suffers from hypertension, diabetes, is overweight and asthma [sic]." (Mot. at 17.) He recently tested positive for COVID-19 and contends he is "at great risk of reinfection." (Id.)

In Opposition, the Government concedes Defendant's medical conditions likely qualify under U.S.S.G. § 1B1.13, but argue his medical records demonstrate Defendant remained asymptomatic after contracting COVID-19. The Government argues at length about the Bureau of Prisons' ("BOP") efforts to implement COVID-19 safety precautions. Finally, the

Government contends Defendant cannot meet the "extraordinary and compelling reasons" standard because he remains a continuing danger to the public and the 18 U.S.C. § 3553(a) factors do not support the reduction of Defendant's sentence.

Preliminarily, it is undisputed Defendant has exhausted his administrative remedies, as he submitted his request for compassionate release to staff at FCI-Lompoc on or about April 8, 2020 and again on May 22, 2020 and the request was denied on June 8, 2020.

The Court now turns to the merits of the Motion.

Regarding the worldwide COVID-19 public health pandemic, despite the BOP's efforts to prevent the spread of COVID-19 among its inmate population, as detailed in the Government's Opposition, there has been an outbreak of COVID-19 among inmates and staff at the Lompoc prison facility, which has not ended.  See Bureau of Prisons (BOP), COVID-19 Cases (updated daily), available at https://www.bop.gov/coronavirus; see also United States v. Robinson, No. 18-cr-00597-RS-1, 2020 WL 1982872, at *1 (N.D. Cal. Apr. 27, 2020) (recognizing "Lompoc prison" as "battling one of the worst most serious COVID-19 outbreaks in the nation"); United States v. Connell, No. 19-CR-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020) (noting same as to the Federal Correctional Institution at Lompoc).  As of July 15, 2020, the BOP has reported no inmates and 2 staff are currently COVID-19 positive, 2 inmates have died from COVID-19, and 847 inmates and 16 staff have recovered from COVID-19 at FCI-Lompoc.  Although it appears the COVID-19 outbreak at FCI-Lompoc is near containment, nearly every inmate housed there has contracted COVID-19 within the last five months.

The Centers for Disease Control and Prevention has identified several risk factors for those likely to experience severe symptoms if they contract COVID-19, including but not limited to, people over the age of 65, people with chronic lung disease or moderate to severe asthma, people who have serious heart conditions, people who are immunocompromised, people with severe obesity, people with hypertension, and people with diabetes.  See Centers for Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19), People Who Are at Higher Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated June 25, 2020).  Defendant's medical records show he is 48 years old and has been diagnosed with hypertension and diabetes.  Accordingly, Defendant falls into the population of high-risk individuals for developing severe symptoms from COVID-19.  In the Motion, Defendant also claims to be obese and suffer from asthma, but his medical records do not reflect either diagnosis.  The Government does not dispute Defendant's hypertension and diabetes place him at a higher risk of developing severe complications from COVID-19.

Defendant's medical records also show he tested positive for COVID-19.  According to his medical records, Defendant was tested for COVID-19 on May 4, 2020 and his results came back positive on May 6, 2020.  Defendant was moved into isolation from other inmates and screened for symptoms daily between May 8, 2020 and May 19, 2020; having reported no symptoms, Defendant was released from isolation on May 19, 2020.  In Reply, however, Defendant argues the BOP misclassified him as asymptomatic.  It is unclear when Defendant began experiencing symptoms, e.g., if it was during his period of isolation from May 8, 2020

through May 19, 2020, or only after he was released back to general population. In any event, according to Defendant, he continues to experience "tightness in his chest, fatigue, and foggy-headedness," which he argues are "all symptoms of COVID-19." (Reply at 7.) He also claims he has suffered from a fever after testing positive for COVID-19 and he received Tylenol to treat all of his symptoms. (Id. at 8, Ex. C at 2.) He contends he was never re-tested for COVID-19 after testing positive and was released back to general population at FCI-Lompoc without first testing negative for COVID-19. (Id. at 7-8.)

The Court gives weight to Defendant's explanation of his symptoms, beyond what is reflected in his medical records. See, e.g., United States v. Fleming, 2:17-cr-00362-AB, slip op. at 9 (C.D. Cal. June 24, 2020) (granting compassionate release to inmate housed at FCI-Lompoc who tested positive for COVID-19 and experienced severe symptoms for an extended period of time, yet his medical records did not reflect the extent of his symptoms and instead indicated he had been cured of the virus despite him continuing to suffer severe breathing complications). Moreover, Defendant presents his handwritten notes with his Reply in which he states he reported his symptoms to medical staff at FCI-Lompoc in writing in early July when he was given a form titled "Inmate Request for Triage Services" and verbally during a visit with a physician's assistant on July 4, 2020. (See Reply, Ex. C at 1-2.) Apparently, early July was the first time any follow-up medical treatment was provided to Defendant after he was released back to general population following his period of isolation.

The Court could draw an inference that Defendant's experience contracting COVID-19 yet suffering relatively mild symptoms calls into question his concern about developing severe complications from COVID-19 in the future. There is no evidence before the Court, however, to show Defendant developed antibodies and obtained immunity from reinfection.[1] Moreover,

---

[1] Some preliminary studies suggest recovery from COVID-19 confers at least temporary immunity against reinfection. See, e.g., Dr. Robert D. Kirkcaldy, et al., COVID-19, Postinfection Immunity Limited Evidence, Many Remaining Questions, J. of the Am. Medical Ass'n, at 2246, available at https://jamanetwork.com/journals/jama/fullarticle/2766097 ("[E]xisting limited data on antibody responses to SARS-CoV-2 and related coronaviruses, as well as one small animal model study, suggest that recovery from COVID-19 might confer immunity against reinfection, at least temporarily. However, the immune response to COVID-19 is not yet fully understood and definitive data on postinfection immunity are lacking."); Dr. Francis Collins, NIH Director's Blog: Study Finds Nearly Everyone Who Recovers From COVID-19 Makes Coronavirus Antibodies, available at https://directorsblog.nih.gov/2020/05/07/study-finds-nearly-everyone-who-recovers-from-covid-19-makes-coronavirus-antibodies/ ("Although more follow-up work is needed to determine just how protective these antibodies are and for how long, these findings suggest that the immune systems of people who survive COVID-19 have been primed to recognize SARS-CoV-2 and possibly thwart a second infection."). On the other hand, there have been documented cases where persons who contracted COVID-19 and recovered later contracted COVID-19 a second time. See, e.g., ABC News, Sailors on Sidelined Carrier Get Virus for Second Time (May 15, 2020), available at

there is no evidence to show if Defendant contracts COVID-19 again, whether he is at risk of developing more severe symptoms than he experienced the first time.[2]  Further, it is unknown what, if any, lasting impacts Defendant may suffer from COVID-19.  As another Court in this District recently stated when granting a motion for compassionate release from another inmate housed at Lompoc, "[i]t is uncertain . . . whether defendant will experience further complications related to his COVID-19 infection, how his existing health conditions may be impacted by his infection, and whether he is vulnerable to reinfection."  United States v. Garrison, No. 11-CR-0922-FMO-6, slip op. at 8 (C.D. Cal. July 8, 2020).  The Court gives weight to Defendant experiencing relatively mild symptoms after contracting COVID-19, but the Court does not conclude that experience is determinative nor undermines the reasonableness of Defendant's concerns about developing severe symptoms, given his medical conditions, if he contracts COVID-19 in the future.

Based on the record before the Court, Defendant has shown he is at high risk for developing severe symptoms from COVID-19, he is housed at a facility with an outbreak of the COVID-19 virus, and he has contracted the virus.  Although Defendant experienced relatively mild symptoms, he has met his burden to show he suffers from "a serious physical or medical condition" that "substantially diminishes [his] ability . . . to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover."  U.S.S.G. § 1B1.13, Application Note 1(A)(ii); accord United States v. Barber, No. 6:18-cr-00446-AA, 2020 WL 2404679, at *5 (D. Or. May 12, 2020) (defendant inmate was housed at FCI-Lompoc, suffered from hypertension, obesity, and diabetes, tested positive for COVID-19, and the court concluded the defendant "suffered from a serious medical condition which significantly diminishes his ability to provide self-care in the environment where he is held.  Defendant has shown that he is 1.) individually at high-risk for severe illness from COVID-19, 2.) being held at an institution where there is a current outbreak of COVID-19, and 3.) has contracted the virus.  Thus, the Court finds that defendant has demonstrated an extraordinary and compelling reason for compassionate release."); United States v. Fischman, No. 16-cr-00246-

---

https://abcnews.go.com/Politics/wireStory/sailors-sidelined-carrier-virus-time-70706487.

[2] "The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood" and it is "not yet known whether...immune protection will be observed for patients with COVID-19." Clinical Questions about COVID-19: Questions and Answers, Centers for Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last updated June 25, 2020).  Previously-infected people could be immune from reinfection entirely, temporarily, or not at all.  See id.  In addition, a person's immunity could depend on whether they were asymptomatic during their first infection—or it could not.  Apoorva Mandavilli, You May Have Antibodies After Coronavirus Infection. But not for Long., N.Y. Times, available at https://www.nytimes.com/2020/06/18/health/coronavirus-antibodies.html (last updated June 20, 2020) (reporting on a study that found that certain sets of antibodies declined quicker in asymptomatic people while another set declined slower).

HSG-1, 2020 WL 2097615, at *3 (N.D. Cal. May 1, 2020). Accordingly, Defendant has shown extraordinary and compelling reasons exist to reduce his sentence.

The Court now turns to the relevant 18 U.S.C. § 3553(a) factors. See U.S.S.G. § 1B1.13.

Regarding the nature and circumstances of the offense, Defendant's underlying crime was serious, as he possessed a significant amount of methamphetamine with intent to distribute, approximately 1.5 kilograms. The offense, however, was simple possession, there were no individual victims, it did not involve any weapons charges, and it was not a crime involving violence. Moreover, Defendant pled guilty immediately and accepted responsibility for his offense. Defendant remained out of custody on bond and self-surrendered to the United States Marshals Service as ordered on June 9, 2016, nearly eight months after he was sentenced. While on bond, Defendant complied with all the conditions imposed without issue. On balance, this factor weighs in favor of granting the Motion.

As to his history and characteristics, Defendant had a prior federal conviction in 1998 for drug possession. He served his custodial sentence and his term of supervised release was terminated early because he complied with all the conditions of supervised release and no longer needed supervision. The other matters identified in his criminal history were not serious and the Presentence Report ("PSR") placed him in criminal history category II. The PSR indicated, following a childhood involving abuse and neglect, as an adult, Defendant had stretches of steady gainful employment and earned significant income until his drug addiction caught up with him. He suffered a serious injury as a child and a workplace injury as an adult. He has an adult daughter, whom he raised as a single parent. Defendant was married in 2015 and has a young son. He has a supportive family and his wife, mother, and uncle submitted letters in support of the Motion. If released, Defendant plans to move back to his residence with his wife and son in Hemet, California, where he resided before he was incarcerated. Defendant's history and characteristics show, with treatment and stability, Defendant is capable of living a productive life.

Further, the prison records Defendant provided demonstrate he has taken advantage of twenty-two educational courses, including courses in drug rehabilitation and those to develop employment skills, and has a work assignment as an orderly. His records do not reflect any disciplinary infractions while in custody of the BOP.[3] Taken with the letter Defendant wrote in support of his Motion, attached as Exhibit A to his Reply, this is significant evidence of Defendant's rehabilitation. Moreover, as stated supra, his records also show he suffers chronic health conditions that place him at high risk of developing severe symptoms of COVID-19, he is housed at a facility with one of the worst records for containing the spread of COVID-19, and the BOP was unable to protect him from contracting the virus. Overall, this factor weighs in favor of granting the Motion. Cf. United States v. Shrout, No. 3:15-CR-00438-JO, 2020 WL 3483703, at *4-5 (D. Or. June 26, 2020) (denying motion for compassionate release because of the

---

[3] It appears Defendant had a disciplinary hearing on December 11, 2019 for use of prohibited drugs or alcohol, although the outcome of that hearing is not evident from the records provided by Defendant. His most recent records, attached to his Reply, do not reflect any disciplinary history.

defendant's history and characteristics, including engaging in financial fraud for decades and promising to self-report to prison after sentencing and absconding); United States v. Kim, Cr. No. 13-303 SOM, 2020 WL 3213312, at *3-4 (D. Haw. June 15, 2020) (denying motion for compassionate release because the defendant's criminal history included two prior drug trafficking convictions and a conviction for assault, he had an outstanding arrest warrant for assault, he provided little evidence of rehabilitation, and he had attempted to escape from his correctional facility in 2017).

Regarding the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant, the Court finds these factors support granting the Motion as well. The Court imposed a mandatory minimum sentence on Defendant. That sentence was below the Guidelines range, as calculated in the PSR. Defendant has served approximately 40% of his sentence. While it gives the Court pause that Defendant has not yet served even half of his sentence, when the Court sentenced Defendant, as recognized by other courts in this District, it did not "sentence [him] to death or a serious, life-threatening illness – both possible outcomes if [he] remains in custody." Garrison, No. CR 11-0922-FMO-6, slip op. at 10; see also Fleming, No. 17-cr-0362-AB, slip op. at 12 ("the court naturally could not foresee the additional suffering that [defendant] would endure due to the extraordinary and compelling circumstances of a global pandemic, and specifically, its undisputed ravaging of the [] Lompoc facility."). Defendant has served over four years of his sentence for his non-violent drug offense, "which is just punishment and adequate deterrence, especially when taking the circumstances of his imprisonment into account." Fleming, No. 17-cr-0362-AB, slip op. at 13; see also United States v. Connell, No. 18-cr-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020). Requiring Defendant to serve the remainder of his sentence at FCI-Lompoc, would "so greatly exceed just punishment for his offense that the risk cannot be tolerated." Connell, 2020 WL 2315858 at *6 (internal quotations and citation omitted).

With respect to the need for the sentence imposed to provide educational or vocational training, medical care, or other correctional treatment, this factor also weighs in favor of granting the Motion. It appears Defendant "is unlikely to be able to get the medical care he needs at Lompoc in the midst of the pandemic." Id. Defendant has been seen by a medical professional at Lompoc only once after being returned to general population, despite suffering COVID-19 symptoms, and he was given Tylenol as treatment. As discussed supra, having contracted COVID-19, Defendant may be at risk of suffering from long-term, severe health complications. In support of the Motion, Defendant's wife submitted a letter stating she would add Defendant to her private medical insurance if he is released from custody and he would be able to obtain necessary medical treatment for his COVID-19 symptoms and any other medical issue. As such, Defendant is more likely to obtain necessary and likely more effective medical care through his wife's private medical insurance than the care offered at FCI-Lompoc, especially during the pandemic. Moreover, he will receive necessary training and drug rehabilitation services pursuant to the terms of his supervised release. See Fleming, No. 17-cr-0362, slip op. at 13.

Accordingly, the relevant § 3553(a) factors weigh in favor of granting the Motion.

Finally, the Court considers whether Defendant poses a danger to the safety of any other person or the community.  See U.S.S.G. § 1B1.13(2).  As stated supra, Defendant's criminal history does not contain any crimes of violence or the use of any weapons.  Cf. United States v. Cruickshank, No. CR17-0323-JLR, 2020 WL 3266531, at *5-6 (W.D. Wash. June 17, 2020) (denying motion for compassionate release because, inter alia, the defendant's underlying conviction included a firearms charge and he had been convicted previously of assault, domestic violence, harassment, stalking, and violations of a no contact order.)  Contrary to the Government's arguments, there is no evidence before the Court to show Defendant poses a danger to the community or any other person.  In fact, the record suggests the opposite.  In this case, Defendant complied with all the conditions imposed while he was released on bond, including the eight-month period after sentencing before he was required to self-surrender.  As to his prior federal conviction, he performed well while on supervised release, which was terminated early because of his total compliance with all conditions imposed.  Further, any perceived danger to public safety caused by Defendant's release from BOP custody is addressed sufficiently by Defendant's placement on supervised release for five years, during which he will be under the watchful eye of his Probation Officer.  Any violation of the conditions of his supervised release will place him at risk of return to incarceration.  See, e.g., Barber, 2020 WL 2404679 at *5; Parker, 2020 WL 2572525 at *13.  Accordingly, Defendant has met his burden to show he does not pose a danger to the safety of any other person or the community.  See U.S.S.G. § 1B1.13; see also 18 U.S.C. § 3142(g).

The Court concludes Defendant has demonstrated extraordinary and compelling reasons warrant a reduction of his sentence.  Defendant met his burden to show he suffers from a qualifying medical condition, the 18 U.S.C. § 3553(a) factors weigh in favor of reducing his sentence, and Defendant met his burden to show he does not present a danger to any other person or the community.

**IV.    Conclusion**

For the foregoing reasons, the Court GRANTS Defendant's Emergency Motion to Reduce Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)(i) and 18 U.S.C. § 3624(c).  Defendant's sentence is reduced to TIME SERVED, followed by a term of five years of supervised release.  Defendant shall be released from the custody of the Bureau of Prisons IMMEDIATELY.

Defendant's term of supervised release is subject to the conditions set forth in the Court's Judgment and Commitment Order dated October 26, 2015.  Supervised release condition number one is modified to require Defendant to comply with the rules and regulations of the United States Pretrial Services and Probation Office and General Order 20-04.  Defendant is not required to comply with standard condition number fourteen, as set forth in General Order 20-04.  See United States v. Evans, 883 F.3d 1154, 1163-64 (9th Cir. 2018); United States v. Magdirila, 962 F.3d 1152, 1158 (9th Cir. 2020).

In addition, Defendant is ordered to comply with all applicable public health orders regarding COVID-19 during his term of supervised release.

**IT IS SO ORDERED.**